UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BERNARD WILSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00225-JMS-KMB |
| | ) | |
| DONALD EMERSON, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

Plaintiff Bernard Wilson, an inmate at the Plainfield Correctional Facility, was caught possessing a pungent, leafy substance and allegedly other controlled substances. He was charged in a prison disciplinary proceeding with violating Indiana law for possession of a controlled substance with intent to distribute. He was convicted, and his sanctions included a loss of 180 days of good-time credit and a demotion in one credit-earning class. He has filed a Petition for a Writ of Habeas Corpus, arguing that the prison staff should have chemically analyzed the contraband to determine whether it actually included controlled substances, that he was denied access to video footage covering the incident, and that he was not permitted to cross-examine witnesses or call some witnesses. [Filing No. 2.] The Petition is ripe for the Court's review.

**I.
LEGAL BACKGROUND**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence

1

justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II.
### FACTUAL BACKGROUND

On May 20, 2024, Sergeant J. Rios charged Mr. Wilson with Offense A-100 violation of law, for possessing a controlled substances with intent to distribute. [Filing No. 15-1 at 1.] The Conduct Report stated as follows:

> On 05/20/2024 at approximately 11:00 am I, Sergeant J. Rios conducted a round in HUS F-Unit. As I entered the HUS F-Unit latrine, I observed a multitude of Offenders attempt to leave. I immediately observed Incarcerated Individual Wilson, Bernard #212866 HUS F2-11L attempt to leave the area in a quick fashion holding something.
>
> I ordered all Offenders to stay in the area. I secured the item in I/I Wilson's hand which was a small plastic bottle. I opened it, observed a plastic bag with a green leafy substance, and noticed a strong pungent odor. I then checked I/I Wilson's sewn in pockets and removed a baggie that I immediately secured on my person. I placed I/I Wilson in mechanical wrist restraints and had him escorted out of the unit to the Sergeant's Office so that a more thorough search could be performed.
>
> Once I completed my detail in the F-Unit latrine, I entered the Sergeant's Office and conducted a more thorough search of I/I Wilson. No other contraband was located on I/I Wilson. In I/I Wilson's possession from the initial contact was: five (5) baggies of a clear crystal-like substance, two (2) baggies of a tan waxy substance believed to be the raw chemical used for chemi-paper, and inside the white bottle a decent quantity of green leafy substance. Due to the variety of suspected narcotics and the amount of them being individually packaged, I suspected that they were in I/I Wilson's possession with the intent to be distributed.
>
> I/I Wilson was offered an opportunity to sign a confiscation form which he refused and went directly back into the unit. I still have a digital copy and the original copy of the confiscation form in the event I/I Wilson would like to have it. I/I Wilson was also notified that he would receive conduct for a 100A violation of law.

[Filing No. 15-1 (referring to Ind. Code 35-48-4-4.6).] Photos of the contraband and confiscation form have been filed. [Filing No. 15-2 (contraband); Filing No. 15-3 (confiscation form).]

2

At screening, Mr. Wilson requested six witnesses, including five fellow inmates and Sergeant Rios himself. [Filing No. 15-4 at 1.] He asked the inmate witnesses "[w]hen Sgt Rios first grabbed me, did he take anything out of my pocket?" [Filing No. 15-4 at 1.] Each inmate witness answered through a written statement, "no," except one inmate who was released from prison before having had an opportunity to answer. [Filing No. 2-1 at 18-22.] He asked Sergeant Rios "[w]hen you first walked up to me, did I give you the bottle?" [Filing No. 15-4 at 1.] Sergeant Rios answered affirmatively through a written statement. [Filing No. 2-1 at 17.]

Mr. Wilson claims that he requested video footage "[o]n the day of [his] initial screening" when he spoke with Hearing Officer Afun on May 21, 2024. [Filing No. 2-1 at 25.] Hearing Officer Afun did not recall receiving a request at the time of the hearing, but he did receive a request on October 22, 2024, which was dated May 21, 2024. [Filing No. 2-1 at 25-26.] Mr. Wilson also provides a letter from Mrs. Constance Schmitt, the Library Supervisor, indicating that she took a "few requests up to the DHB mailbox" in June 2024 and December 2024, after the conclusion of Mr. Wilson's hearing. [Filing No. 2-1 at 27.]

The Screening Report indicates that Mr. Wilson did not request video footage covering the incident. [Filing No. 15-4 at 1.] The Screening Report also clearly states that "[f]ailure to request . . . physical evidence may waive your right to have . . . physical evidence presented/considered at your hearing." [Filing No. 15-4 at 1.]

On May 24, 2024, at the disciplinary hearing, Mr. Wilson asserted that "the conduct report [was] not correct due to the violation code of 100A in the Code. The conduct report doesn't state why [he was] being charged the way [he was.] The lay advocate stated that only the immediate supervisor shall be able to help put the conduct report together. Officer J. Smith which is a hearing officer helped." [Filing No. 15-6 at 1.]

3

      Hearing Officer V. Afun found Mr. Wilson guilty, writing that:

> DHB finds guilty due to staff reports, photos, witness statements, IC-Code 35-48-4-4.6.  I.I. Wilson is in accordance with the Indiana code 35-48-4-4.6 under Section B with the intent to deliver or distribute (like highlighted on the represented code). Due to the amount located in this case and on the person of I.I. Wilson, it is believed this was the intended thought process of distributing and delivery/selling.  The Conduct report does not describe how it was cited in the body but in fact does state how the incident happened and is cited but not exactly how.  The code was pasted to a word document and reviewed by the lay advocate with I.I. Wilson.
>
> The Appendix does state the conduct report shall explain how the offender's behavior violated the cited law.  However, it may not be included[.] [T]he conduct does cover the cited Indiana code, but the actions of I.I. Wilson and packaging of the drugs are the details of the conduct and how it came about.  All 6 live witnesses were considered in the hearing and heard out for this case.  The Indiana law Code is covered under the 35-48-4-4.6 with the conduct report and is suspected with the way the packaging and amount was the intent to deliver and or distribute though out the facility.  There would be no other reason to have it packaged this way.  Officer J. Smith was not hearing this case and[.][1]

[Filing No. 15-6 at 1.]

      Mr. Wilson's sanctions included a loss of 180 days of good-time credit and a demotion in one credit-earning class.  [Filing No. 15-6 at 1.]

      Mr. Wilson filed first- and second-level appeals, which were both denied.  [Filing No. 15-8; Filing No. 15-9.]  In his first-level appeal, Mr. Wilson argued his right to be protected from double jeopardy was violated; that the disciplinary proceeding did not properly use a "statutory elements test"; and that the Indiana Constitution prohibits his conviction.  [Filing No. 2-1 at 1.]  In his second-level appeal, he argued that the decisionmaker was not impartial; that the decisionmaker incorrectly interpreted the substantive Indiana criminal law; that the Conduct Report was not sufficiently specific in how his conduct met the elements of the offense; that evidence was planted on him; that his witnesses prove his innocence; and that he was improperly

---

[1] As the Respondent has noted, "[a]lthough the [Hearing Officer's] statement ends mid-sentence, this is the end of the [Hearing Officer's] reasoning."  [Filing No. 15 at 5 n.1.]

denied chemical testing of the substances and video evidence covering the incident. [Filing No. 2-1 at 2-6.]

Regarding the request to access video footage, the second-level appeal's decision stated that "[t]here is no evidence in the record of this disciplinary case . . . that [Mr. Wilson] requested camera footage of the whole incident at any time prior to [Mr. Wilson's] appeals" and considered that argument waived. [Filing No. 15-9 at 1.]

Mr. Wilson has filed a Petition for a Writ of Habeas Corpus. [Filing No. 2.]

### III.
### DISCUSSION

Mr. Wilson argues that the prison staff did not chemically analyze the contraband to determine whether it actually constituted controlled substances, that he was denied access to video footage covering the incident, and that he was not permitted to cross-examine witnesses or call some witnesses – all collectively understood as an unlawful denial of the opportunity to present evidence. [Filing No. 2 at 1-3.] The Respondent argues that Mr. Wilson "failed to exhaust his administrative remedies to his claims that he was denied evidence and witnesses." [Filing No. 15 at 8.] Because exhaustion affects what issues the Court will consider, the Court addresses exhaustion first.

### A. Exhaustion

The Respondent argues that Mr. Wilson "failed to exhaust his administrative remedies to his claims that he was denied evidence and witnesses." [Filing No. 15 at 8.] The Respondent states that Mr. Wilson "did raise the testing and camera footage issues at the second level," but at the first level he "failed to raise these issues." [Filing No. 15 at 8.]

Mr. Wilson does not appear to deny that he failed to raise his arguments at each level of appeal, stating that "it may be true that [his] claims would be barred." [Filing No. 17 at 2.] Instead,

5

he argues that his case is "extraordinary" because he relied on a "self-proclaimed jailhouse lawyer to prepare the facility level DHB appeal. This jailhouse lawyer proceeded to file the facility level appeal on [his] behalf without ever showing [him] the contents of what had been filed in his name." [Filing No. 17 at 2.] When Mr. Wilson prepared his second-level appeal himself, he states that he "ensured that all issues had been properly addressed." [Filing No. 17 at 2.] Mr. Wilson states that had his appeal "been handled by a competent lay law clerk," he "would have clearly been challenging the sufficiency of the evidence; the surveillance and numerous other issues . . . ." [Filing No. 17 at 3.]

Prisoners must exhaust their remedies before a writ of habeas corpus may be granted. 28 U.S.C. § 2254(b)(1)(A). To meet this requirement, a petitioner "must raise the issue at each and every level in the state court system." *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004). In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the Final Reviewing Authority may be raised in a subsequent petition for writ of habeas corpus unless a showing of cause and prejudice or a miscarriage of justice has been made. *See* 28 U.S.C. § 2254(b)(1)(A); *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002).

Mr. Wilson does not dispute that he did not exhaust his internal remedies by raising his arguments at each level of review. Instead, he blames his failure to exhaust on the jailhouse lawyer. In a typical post-conviction habeas proceeding, "ineffective assistance of counsel constitutes cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 479 (1986). But in a prison disciplinary proceeding, "inmates do not 'have a right to either retained or appointed counsel.'" *Baxter v. Palmigiano*, 96 S. Ct. 1551, 1556 (1976) (quoting *Wolff*, 418 U.S. at 570). And there accordingly is no right to unlicensed jailhouse counsel or any particular due process right to an

administrative appeal. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001) (holding that a Court must "not to add to the procedures required by *Wolff,* which . . . represents a balance of interests that should not be further adjusted in favor of prisoners.")  Mr. Wilson is responsible for his own filings, and he has failed to demonstrate cause for his failure to exhaust.

In any event, the habeas corpus statute states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  The merits are straightforward to address, so the Court elects to consider them notwithstanding Mr. Wilson's failure to exhaust.  28 U.S.C. § 2254(b)(2); *Brown v. Watters*, 599 F.3d 602, 609-10 (7th Cir. 2010) (noting that the Supreme Court has suggested that bypassing exhaustion can be appropriate) (citing *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997)).

**B.     Right to Present Evidence**

*1.     Chemical Analysis of Alleged Controlled Substances*

Mr. Wilson argues that prison staff should have chemically tested the alleged contraband to prove that it included controlled substances.  [Filing No. 2 at 2.]

The Respondent argues that "[p]rison inmates facing a disciplinary charge are not entitled to have suspected controlled substances tested to verify the presence or identification of the suspected substance."  [Filing No. 15 at 11.]

Mr. Wilson reiterates that he was entitled to chemical testing of the contraband.  [Filing No. 17 at 5.]  He states that because he was charged with a violation of law based on the Indiana criminal code, his prison disciplinary proceeding "qualifie[d] as a criminal proceeding as [he was] charged with a crime under I.C. 35-48-4-4.6, therefore [he], as a matter of right [was] entitled to the 'full panoply of rights due to a defendant in a criminal proceeding.'"  [Filing No. 17 at 4-5 (quoting *Wolff*, 418 U.S. at 556).]

The Seventh Circuit has held that "even in a criminal trial, chemical analysis [is] not required to prove identity of suspected controlled substance," so "prison officials do not need a chemist" or chemical testing to identify drugs in a prison disciplinary proceeding. *Burks-Bey v. Vannatta*, 130 F. App'x 46, 48 (7th Cir. 2005) (affirming prison disciplinary punishment against prisoner). Even if the disciplinary proceeding were treated as a criminal trial, witness testimony would still suffice; chemical analysis is not required. *Id.*

Mr. Wilson is not entitled to habeas relief on the ground that the facility did not chemically analyze the alleged controlled substances.

 2. *Request for Video Evidence*

Mr. Wilson argues that he was unlawfully denied video evidence because he requested it through various means, including Hearing Officer Afun and Mrs. Schmitt, the Library Supervisor. [Filing No. 2 at 3.]

The Respondent argues that Mr. Wilson's Screening Report "does not show that [he] requested video evidence"; that Hearing Officer Afun did not remember receiving such a request; that the request he did receive arrived October 22, 2024, well after Mr. Wilson's hearing; and that Mrs. Schmitt took requests only as early as June 2024, also after Mr. Wilson's hearing and thus too late. [Filing No. 15 at 12.] The Respondent avers that even if Mr. Wilson did request video footage, "he does not explain what the video would show and how that evidence would have been exculpatory," rendering any error harmless. [Filing No. 15 at 13.]

Mr. Wilson replies that his video-footage request should have been granted because it would have shown that Sergeant Rios "actually planted the seven bags by falsely cataloging them with actual evidence obtained" from Mr. Wilson, including "one vessel containing a singular substance composed of a pungent smelling, organic, leafy material and nothing else . . . ." [Filing

8

No. 17 at 5-6.] Mr. Wilson states that "[a]t worst the state can possibly demonstrate simple possession." [Filing No. 17 at 7.]

Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones*, 637 F.3d at 847, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017).

The evidence could support the claim that Mr. Wilson did write a request for video evidence before the date of his hearing. [Filing No. 2-1 at 26.] The Court can assume for the sake of analysis that Mr. Wilson properly submitted the request and prison staff improperly denied it or withheld the video evidence. But even so, that assumption does not aid Mr. Wilson because denial of the video is harmless. *Piggie,* 344 F.3d at 678 (harmless error analysis applies to prison disciplinary proceedings); *Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011) (errors in a prison disciplinary proceeding that do not prejudice the prisoner are deemed harmless). The standard for a prison disciplinary proceeding is not beyond a reasonable doubt; it is merely "some evidence" of the decision. *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999). In this case, Mr. Wilson literally admits to having the one bag of a pungent leafy substance. [Filing No. 17 at 6.] Mr. Wilson's admission, combined with the Conduct Report, is still some evidence of Mr. Wilson's

9

offense, and no video would change that. *Id.* (A Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision.").

Mr. Wilson is not entitled to habeas relief on the ground that he was unlawfully denied video evidence.

### 3. *Cross Examination and Presenting Witnesses*

Mr. Wilson argues that he was "denied all evidence and cross exam[ination of] witness[es] and using witnesses." [Filing No. 2 at 3.] Among the witnesses were Mrs. Schmitt and Hearing Officer Afun to prove he submitted his video request. [Filing No. 2 at 3.]

The Respondent argues that inmates are not entitled to confront or cross-examine witnesses in prison disciplinary proceedings. [Filing No. 15 at 13.] The Respondent avers that Mr. Wilson "received statements from all the witnesses he requested at screening with the exception of [a] witness who had been release from incarceration before [his] disciplinary hearing" and that Mrs. Schmitt and Hearing Officer Afun's further involvement with Mr. Wilson's case came only after the case concluded. [Filing No. 15 at 13.]

Mr. Wilson argues that he has "properly submitted documentation from [O]fficer Afun and Ms. Schmitt in support of [his] claim." [Filing No. 17 at 6.]

Mr. Wilson indicates that because his charge references Indiana criminal law, he should be afforded the right to cross-examine witnesses. But the Seventh Circuit has held that "prison disciplinary proceedings do not require the 'full panoply of rights' due a defendant in a criminal proceeding," so "[i]n a prison disciplinary hearing, inmates have no right to cross examine adverse witnesses." *Campbell v. Henman*, 106 F.3d 403, at * 2 (7th Cir. 1997) (unpublished) (quoting *Wolff* 418 U.S. at 556). "Confrontation and cross-examination of witnesses in the context of a prison disciplinary proceeding are matters left to the sound discretion of prison officials." *Brown-Bey v. United States*, 720 F.2d 467, 469 (7th Cir. 1983). Therefore, Mr. Wilson was not entitled

to cross-examine witnesses, and the prison was entitled to deny that cross-examination. As for calling Mrs. Schmitt and Hearing Officer Afun as friendly witnesses, even assuming they would corroborate that he requested video evidence, it does not affect the outcome. As the Court has described above, the denial of the video footage was, at worst, harmless error because there was some independent evidence of Mr. Wilson's offense.

Mr. Wilson is not entitled to habeas relief on the ground that he was not permitted to cross-examine witnesses.

## IV.
## CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in Mr. Wilson's case, and there was no constitutional infirmity in the proceeding that entitles him to the relief he seeks. Accordingly, Mr. Wilson's Petition for a Writ of Habeas Corpus, [2], is **DENIED**, and the action is dismissed.

Final judgment shall issue by separate order.

Date: 6/4/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

BERNARD WILSON
212866
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Monika P. Talbot
INDIANA ATTORNEY GENERAL
monika.talbot@atg.in.gov